RICHARDS, TRUESDALE & Co. vs. WARD E. HUNT.

(*In Chancery.*)

RUTLAND,
January,
1834.

If a debtor, in embarrassed circumstances, fraudulently convey his property to others, and, by falsely representing his situation to his creditors, induce them to accept a composition and discharge their debts, such discharge will be set aside in equity as fraudulent, and the payment of the debts decreed.

This was a petition in chancery, in which the orators set forth, that on the fourth of May, 1826, the respondent was indebted to them as partners in the sum of —— dollars ; that the orators, in April, 1827, put their demands in suit, recovered a judgment in September following, took out execution, and committed the respondent to jail. The respondent, while so committed, (their said debt being unpaid,) " intending to deceive and defraud the orators, and to defraud them out of their just debt, falsely, fraudulently, and deceitfully, represented to the orators, that he was in insolvent circumstances—that he was indebted to a much larger amount than he had wherewith to pay—that his creditors had attached and disposed of the little property he had, in part payment of his debts, and that he had nothing left him but his personal services from which to support and maintain his family, and being confined to the liberties of the jail, could not avail himself even of that privilege—that he had a large family, now reduced to absolute necessity, and wholly dependent on his efforts and the charity of his friends, for subsistence ;—that his health was feeble, and that he should be reluctantly compelled to avail himself of the poor debtor's oath to liberate his person from confinement, unless the orators, in consideration of his misfortunes and total incapacity to pay their claims, would consent to compromise their claims," &c. That the orators, trusting in the integrity and honesty of the defendant, and giving faith and credit to his representations, were induced to compromise with him and receive security, payable at a future day, for about one third of their debt ;—and in consideration of that security discharged their debt. The bill then proceeds to state, that the defendant had at that time property of his own in possession to a large amount, viz : $3000 ; and to set forth specifically sundry fraudulent and deceitful conveyances, by which the respondent had previously conveyed to sundry friends property to a very large amount, upon a secret and fraudulent trust, for his own use and benefit, and upon a secret contract to reconvey to him,

RUTLAND,  when he should have effected a compromise with his creditors;
January,
1834.   also assignments of personal estate under like circumstances;—

Richards et al. and further, that the respondent was possessed of a large prop-
vs.      erty in credits, which were available, amply sufficient to pay
Hunt.
the orators' debt.   Of these facts the bill alleges the orators
were ignorant.   For this fraudulent representation of the re-
spondent's situation and property, the bill prayed that the dis-
charge might be set aside, and that the respondent be decreed
to pay the balance due to the orators.   The answer admitted
the facts stated in the bill, except that it denied the fraud, and
insisted upon the truth of the representations made to the
orators.   A mass of evidence was exhibited, in relation to the
disposition of the respondent's property, which it is not neces-
sary here to be repeated.

After argument, the opinion of the court was delivered by

PHELPS, J.—The first inquiry in this case concerns the
truth of the allegations contained in the bill.   The debt and
proceedings in relation to it are admitted in the respondent's
answer, and representations similar to, and indeed substantially
to the purport of those charged in the bill, are also admitted.
The controversy, therefore, so far as facts are concerned, is nar-
rowed to the simple question of the truth or falsity of those
representations, and the character of the several conveyances
of the respondent's property specified in the bill.   [Here the
judge proceeded to examine the evidence in the case, but his
remarks upon that part of the subject are here omitted.]

Upon the whole, we come to this conclusion: That the rep-
resentations were substantially false—that they were intention-
ally so—and that they were designed to deceive the creditors
of the respondent generally, and the orators in particular, and
to induce them to accept a small composition for their debts.
That property of the respondent to a large amount was passed
from him, by the several conveyances specified, ostensibly for
a good and valuable consideration, but in reality upon a secret
and fraudulent trust for the benefit of the respondent.   That
the purpose of these conveyances was to avoid the rights of his
creditors, and to deceive them in relation to his means of satis-
fying their debts.   That the orators were deceived by these
representations, and these conveyances, and induced, by means
of them, to accept a less sum for their debt, than they would
or ought to have done, had they been advised of the truth.

This being our conclusion upon the matter of fact, the only question remaining is as to the law of the case.

RUTLAND, January, 1834.

Richards et al. vs. Hunt.

This application presents, it must be confessed, a new case; and we are not furnished with any precedent of a decree such as the bill seeks, made under circumstances precisely like the present. In deciding therefore upon the rule which is to govern us, we must resort to first principles; taking as our guide the application of those principles as already made to analagous cases.

The rule, which requires good faith and an adherence to truth in human affairs, is a cardinal principle of equity jurisdiction. Nor is it confined to that system which, in this country, as well as in England, has been distinguished by the peculiar appellation of chancery. It is a part of our common law—it is a part of our system of ethics. It is a part of the moral and municipal code of every civilized people; and in every christian community is universally acknowledged as resting upon higher and more sacred authority than mere human enactment. It is sustained by the philosophy of the heathen world—of that which has been built upon the supposed law of nature—by the moral code and religious faith of every enlightened people, and is to be found in every system which is at this day resorted to as illustrating the principles of justice, and throwing light upon its due administration. It is the root of a very considerable portion of our law, and the basis of a very extensive branch of equity jurisdiction.

In the application of this principle, the wilful assertion of a falsehood, the wilful suppression of the truth, in particulars material and important to be known, has been stamped with the character and followed by the consequences of fraud. And whenever the deception has proved effectual to the pecuniary injury of the party against whom it was directed, both courts of law and courts of equity have extended relief. The rules which govern both courts are the same, except so far as their different modes of action upon the subject lead to different forms of relief. As to how far the mere omission to state facts may be deemed fraudulent under given circumstances, there has indeed been a difference of opinion. Where no representation is required, or given, mere silence has not been considered fraudulent. But where a representation is made, with the intent that it shall be relied upon, and it is so, any false assertion upon a material point, or suppression of a material fact, the

RUTLAND,
January,
1834.

Richards et al.
vs.
Hunt.

contrary of which would be inferred from the tenor of the representation, is stamped by our law with fraud. So too where the party negotiated with is referred to the exercise of his own observation and judgment, yet if positive means of deception are used to mislead him in any material particular, the result is the same. At the same time, in order to lay the foundation of an action at law, or of equitable relief, it must appear that the party has been both *deceived* and *injured*.

Let us apply these rules to the case before us. That the respondent intended his representations should be relied upon, is evident from the circumstances under which, and the purpose for which, they were made. That they were relied upon by the orators is equally evident, from their conduct in accepting so small a portion in lieu of their whole debt. And that they were injured, is equally apparent, from the obvious ability of the respondent to pay the whole debt, which is disclosed by the case.

There is in this case, no ground for supposing the respondent ignorant of his own affairs. He must therefore be held to strict truth in his representations. Were these representations true? The tenor of them is, that the respondent was poor and destitute—that he had no resource for the maintenance of a numerous family, but his personal labor—that he had not the means of paying the debt—and that, if payment was insisted on, he should be driven to take advantage of the poor debtor's oath.

Now the reverse of all this was true. We have evidence of property, to the amount of some thousands, deposited by the respondent in the hands of his friends, and at his command. Here then was a positive misrepresentation a *suggestio falsi*, and that in the important object of inquiry. There was also *suppressio veri*, in concealing the ample means in his possession for the payment of the debt; and in this point of view, it was fraudulent, as the fact concealed was inconsistent with the general tenor of his representations.

The case falls then within the ordinary rules for equitable relief in other cases. Is there any reason why those rules should not be applied? If equity requires good faith in all business transactions, why not in this? Can any reason be given, why an appeal to the humanity and charitable feelings of a creditor should not be conducted with truth and honesty? Or shall we deny to the party defrauded of his property,

RUTLAND,
*January,*
1834.

Richards et al.
*vs.*
Hunt.

through the medium of his benevolent and honorable feelings, the relief which we should afford to him if over-reached in the competitions of avarice?

The want of a precedent precisely in point is no very strong argument in the case. Where the principle and its application are clear, we have no need of precedent. Fraud presents itself in forms infinitely various, and as new devices are adopted, as old ones are detected and defeated, so new practical applications of established principles must be made. The want of precedents may in some measure be accounted for, by the existence in other states, to whose jurisprudence we look for aid, of bankrupt and insolvent laws. But the principles which are applied to the practical operation of the laws where they exist, afford a strong argument from analogy applicable to this case. The severity with which fraudulent disclosures are there visited shows in what light the offence is regarded. It would be strange indeed, if what in one case is treated as equivalent to felony, should in another fall short of the milder appellation of legal fraud.

In some countries, deeds of composition are frequent. With respect to these, it is well known that all preferences of one creditor to another by secret means, are treated as fraudulent and void. There is still greater reason why an imposition practised upon the creditors by the debtor himself should be treated as fraudulent.

But we are not wholly without precedent. The case of *Dacosta* vs. *Lanscrit,* 2 P. Will. 170, is very analagous to this. And the propriety of setting aside a release or discharge, obtained under similar circumstances, is fully recognized by Judge Story in *Phettyplace* vs. *Sayles,* 4 Mason, 312. That case was very similar to the present. The plaintiff, however, failed in establishing the facts. But the opinion of the court, upon the legal question, was expressed most decidedly in his favor.

It is admitted on all hands, that this court might set aside the several conveyances of the respondent's property, which are specified in the bill, in favor of these orators; and that a court of law might treat them as void. But this would be of no avail so long as the discharge is in force. Yet the very fraud designed to be effected by these conveyances was consummated by obtaining this discharge. Shall the one be treated as void, and not the other? Does the mere form in which the fraud appears alter its character? It must be a lame and im-

RUTLAND,
January,
1834.

Richards et al.
vs.
Hunt.

potent administration of justice, which would be impeded or arrested by such difficulties. Chancery looks at the substance and character of the transaction, without regarding the particular garb in which the party may choose to dress it.

It is true that general representations of a man's pecuniary situation may be made, sometimes, under peculiar circumstances, and may be influenced by hope or fear, by dejection or discouragement. The result of business transactions, especially if extensive, is always uncertain. It might happen, that such representations may be made, with perfect honesty, and at the same time may not be fully sustained in the sequel. But this consideration appertains rather to the inquiry as to fact. It is certainly true that regard is to be had to such circumstances, in ascertaining the party's intent. But there is no danger in insisting upon good faith and common honesty—nor in holding, that where wilful falsehood is resorted to, more especially if a settled purpose to deceive is deliberately and perseveringly executed, that the party shall be responsible for the consequences of such a course.

It is argued that general representations, such as the one set forth in this bill, are not usually relied on, and probably were not in this instance; and that men in the situation of the orator generally examine for themselves into the state of their debtor's property.

Whatever weight there may be in this argument recoils with increased force upon the respondent. The orators, it appears from the evidence, did examine into the situation of his affairs, and what did they find? They found his property apparently gone from him—conveyance after conveyance on record, for considerations apparently good; and, in short, they found about him the usual indications of poverty. All this, however, was factitious. False colors were held out; false appearances were created; the facts were perverted; and, under the influence of this systematic chicanery, they were led to a false conclusion, deceived and defrauded. Although they may have pursued their own course of inquiry, and exercised their own observation and judgment, yet positive means were used to mislead them, even here. This, as already observed, is equally fraudulent with positive assertion.

On the whole, we are satisfied that the application of the most familiar principles to the facts as proved requires a decree for the orators for the balance of their debt.—*Decree accordingly.*