CHESTER BAXTER v. SOLOMON DOWNER.

*Contract.　Fraud.*

The defendant promised to indemnify the plaintiff, and save him harmless of all loss, cost, &c., arising from the plaintiff's having given a receipt for certain property attached on a writ against the defendant, and, upon judgment being obtained against the defendant, the plaintiff, in satisfaction of his liability upon the receipt, signed a note with, and as surety for the defendant, and upon his, the defendant's request and promise of security, which the creditor accepted.　As security for signing said note the defendant turned out to the plaintiff notes which he held against a third person, but which, as it afterwards proved, had been attached by the trustee process.　*Held*, that the new contract arising from the signing of the note, and receiving the collaterals, superseded and discharged the promise of indemnity for signing the receipt, unless the plaintiff was induced to enter into the second arrangement by the fraud or misrepresentation of the defendant.

The facts testified to, *q. v.*, *held* insufficient to establish such a case of fraud in the second transaction as to prevent its superseding the first.

ASSUMPSIT on an agreement in writing, signed by the defendant, which was as follows:

" Whereas, Chester Baxter has this day given a receipt for three two-years-old colts, one three-years-old colt, one bay mare and colt, seven cows, one hundred and thirty-one sheep and forty-four this spring lambs, six oxen, one two-years-old stag, one dry cow, one three-years-old stud colt, three two-years-old cattle, which receipt runs to Daniel Emery, who attached said property on a suit in favor of Judge Bartholomew of Washington *vs.* said Downer and Daniel Tarbell, jr., now I hereby promise and agree with said Baxter that in consideration of his giving said receipt as aforesaid, to indemnify and save him harmless of all losses, costs and trouble growing out or arising from his said receipt, and if the said Baxter requires I will on demand secure him for signing said receipt.　　　　　　　　Sharon, May 26, 1854."

The plaintiff alleged in his declaration that the defendant had not indemnified, or, when requested, given security, &c.　Plea, the general issue ; trial by jury, December Term, 1856,— UNDERWOOD, J., presiding.

The plaintiff gave in evidence the contract above set forth, and testified that in March, 1855, Bartholomew and Emery demanded

of him the property named in the receipt; that some time after that, in June, 1855, Bartholomew and the defendant called upon him, and the defendant said that he would settle it if he could; that, after some conversation, Bartholomew offered to take the plaintiff's note for twelve hundred dollars, and give up the receipt; that the defendant then told the plaintiff that if he would sign a note for twelve hundred dollars he would secure him the next day; that the plaintiff insisted he must have the security then; that the defendant then left and shortly returned with notes against one Powers amounting to twelve hundred dollars, but payable in installments; that the plaintiff knew those notes were good, but objected to taking as security notes having such time to run, but finally received them as security, and signed the note to Bartholomew and gave a receipt to the defendant for the notes against Powers, which was in these words:

"Sharon, June 7, 1855. Received of Solomon Downer two notes signed by William B. Powers," [description of notes omitted.] "The above described notes I have received as collateral security for signing a note this day, with said Downer, to B. W. Bartholomew, for twelve hundred dollars on demand and interest, with an agreement by him to wait until the first of January next; and when said Downer indemnifies me from all costs and damages arising from my signing said note, I am to return said notes above described, to him."

It appeared that upon the signing of said note the receipt for the property attached, which was signed by the plaintiff, was surrendered and cancelled. Afterwards, and within a few days, the plaintiff ascertained that Powers had been previously summoned as trustee of the defendant, in respect to the above named notes, and had filed his disclosure in court, and thereupon the plaintiff immediately demanded of the defendant that he should give security in accordance with the tenor of the agreement of indemnity first above recited. To this demand the defendant made no reply, and thereupon the plaintiff caused this suit to be commenced.

Afterwards, in October, 1855, the defendant paid and took up the note for twelve hundred dollars and exhibited it to the plaintiff, and the plaintiff cut his name from it, and then surrendered the notes against Powers and the receipt above recited which he had

given therefor, and told the defendant he must go and pay the attorney who had commenced this suit, for the writ and service, which he never did.

Upon these facts the defendant insisted that the plaintiff was not entitled to recover, and requested the court so to charge the jury; but the court instructed the jury to return a verdict for the plaintiff for nominal damages. Exceptions by the defendant.

*Washburn & Marsh* and *W. C. French*, for the defendant.

There has been no breach of the contract of indemnity given by the defendant to the plaintiff for signing the receipt to the officer. The giving of the note to Bartholomew was an independent transaction upon distinct consideration. The receipt to the officer, signed by the plaintiff, was surrendered and cancelled, and the agreement of June 7, 1855, took the place of the contract of indemnity. And the failure of the security for signing the note as surety did not remit the plaintiff to his remedy upon the cancelled agreement, but only gave a claim upon the express or implied promise incident to the signing of the note.

*D. C. Dennison* and *Converse & Barrett*, for the plaintiff.

I. The liability, obligation or duty of the defendant upon the written agreement to indemnify, declared upon by the plaintiff, had not been waived nor discharged by the plaintiff; nor had it been by any act of the defendant fulfilled before this suit was instituted.

If the plaintiff had intended to release the defendant from liability upon this contract, he would have surrendered the paper to be cancelled or defendant would have demanded its surrender.

II. The plaintiff may rightfully and legally disregard the whole transaction at the time the note was given, because the exceptions show that the defendant, at the time, undertook to *deceive* and *defraud* the plaintiff, and succeeded.

For this reason the plaintiff may well repudiate the latter transaction and seek security under " the written agreement of indemnity," upon which he has declared.

The opinion of the court was delivered by

REDFIELD, CH. J. The question in this case is whether the

Baxter *v.* Downer.

contract of indemnity sued upon was cancelled by the contract at the time the plaintiff gave his note for the receipt and took it up and surrendered it to the defendant. It is admitted that the contract sued upon is broad enough to cover the claim made in the action, if the note given by plaintiff had been given in order to relieve himself from the receipt, on the claim of the creditor, and without any new contract with the defendant.

But it seems to us that this new contract, if it is a binding contract between the parties, must be regarded as superseding the contract sued upon. The plaintiff gave a new contract, took security and a new contract for indemnity, and surrendered the receipt to which the contract sued upon refers, as the basis of the first indemnity. If then there was no mistake or fraud or illegality in this second contract, upon general principles, it must supersede and discharge the former one.

It has been held that if a party, by false and fraudulent representations, induce his creditor to give up his receipt upon part payment, he may still be sued upon it and compelled to pay the balance; *Reynolds* v. *French*, 8 Vt. 85. The representations in this case were in reference to the solvency of the debtor, and his means of paying his debts. *Richards* v. *Hunt*, 6 Vt. 251, is a case in chancery where a discharge is set aside upon similar grounds.

So too, where, under former usury laws in the state, the contract was void, if a valid contract was merged in a usurious one, and surrendered, it might still be sued, and a recovery be had upon it, the contract by which it was compounded being illegal; *Edgell* v. *Sanford*, 6 Vt. 551. So also where the mortgagor conveys absolutely to the mortgagee in payment of the mortgage; if such conveyance be avoided by the creditors of the mortgagor as fraudulent, it leaves the mortgage in force as to such creditors; *Fish* v. *Clays and Morse*, 10 Vt. 81. Many other cases of this kind might be stated.

But in the present case no such question was submitted to the jury; and although we are undoubtedly to take all the testimony detailed in the exceptions, as verified by the jury, the verdict being directed upon that basis, it seems rather difficult to make such a case of fraud out of it as to justify the disregard of the contract of substitution. It is not stated that Downer represented

that the notes he deposited with Baxter were due and owing, unembarrassed, although from the circumstances there can be little doubt he intended to have the plaintiff so understand, and that is equivalent to a representation, especially when one obtains credit upon such understanding. But this is mere inference and should be made by the triers of the facts.

So, too, in regard to defendant's knowledge of the falsity of these facts, it is neither stated or found. And, although rendered highly probable by the other facts in the case, it is quite supposable that this trustee process might not have been known or remembered by defendant at the time, or it might have been only for an insignificant portion of the debt.

If the fact were distinctly found that this was a deliberate fraud practiced by defendant upon plaintiff to iuduce him to give his note and take up the receipt and surrender it to him, very likely the plaintiff might be allowed to stand upon the original contract of indemnity the same as if he had not surrendered the receipt or made the new contract, which he was induced to enter into by the fraud.

Judgment reversed and case remanded.